UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AEGEAN, LLC, <br> MUNCIE SENIOR LIVING, LLC, <br> MADISON SENIOR LIVING, LLC, <br> GREENWOOD SENIOR LIVING, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> MERIDIAN SENIOR LIVING, LLC, a North Carolina LLC, and <br> MERIDIAN SENIOR LIVING, LLC, a Delaware LLC, <br><br> Defendants. | No. 1:19-cv-2020-JMS-MJD |

# **ORDER**

Plaintiffs Aegean, LLC ("Aegean"), Muncie Senior Living, LLC ("Muncie"), Madison Park Senior Living, LLC ("Madison Park"), and Greenwood Senior Living, LLC ("Greenwood"), filed a Second Amended Complaint against Defendants Meridian Senior Living, LLC of North Carolina ("MSL North Carolina"), and Meridian Senior Living, LLC of Delaware ("MSL Delaware"). [Filing No. 22-1.] This case involves an alleged agreement between the parties concerning the development of several senior living facilities in central Indiana. Presently pending before the Court are MSL North Carolina's and MSL Delaware's Motions to Dismiss. [Filing No. 22; Filing No. 29.] For the reasons stated herein, the Court grants both motions.

## I.
### STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing

the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

A party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain allegations that collectively "state a claim to relief that is plausible on its face." *Alarm Detection Sys.*, 930 F.3d at 821 (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

However, when a party alleges fraud, he or she "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means that the plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud. *United States ex rel. Berkowitz v. Automation Aids, Inc*., 896 F.3d 834, 839 (7th Cir. 2018) (internal quotations and citation omitted). Although what constitutes "particularity" may depend on the facts of each case, plaintiffs must "use some means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*. (internal quotations, alteration, and citation omitted).

## II.
### BACKGROUND

Aegean filed a Complaint in Marion Superior Court against MSL North Carolina, alleging breach of contract, breach of joint venture, unjust enrichment, and violation of the Indiana Uniform Trade Secrets Act ("IUTSA"). [Filing No. 1-1 at 2-7.] After MSL North Carolina filed a Motion to Dismiss, [Filing No. 1-1 at 18-33], Aegean amended the complaint to include as Plaintiffs Muncie, Madison Park, and Greenwood (collectively, "the Senior Living Plaintiffs"), and add a claim for constructive fraud, [Filing No. 1-1 at 36-44]. MSL North Carolina then filed another Motion to Dismiss, [Filing No. 1-1 at 49-66], which was denied, [Filing No. 1-1 at 101-02]. Thereafter, Plaintiffs filed a Second Amended Complaint, adding MSL Delaware as a Defendant. [Filing No. 1-1 at 122-132.] MSL Delaware then removed the case to this Court. [Filing No. 1].

In the Second Amended Complaint, Plaintiffs allege that Aegean entered into a Consultant Agreement ("the Agreement") with MSL North Carolina on January 15, 2015. [Filing No. 22-1 at 2.] The Agreement stated that Aegean was a land developer in Anderson, Indiana, that controlled Madison Park. [Filing No. 22-2 at 1]. As such, Aegean agreed to consult with MSL North Carolina on the construction of senior living facilities, in exchange for "a fee of $300,000 per each senior living project which [MSL North Carolina] agree[d] to construct." [Filing No. 22-2 at 1.] The fee was to be paid to Aegean as follows: 50% when MSL North Carolina closed on the real estate; 25% upon assumption of the tax increment financing; 12.5% six months after closing; and 12.5% immediately upon the issuance of a certificate of occupancy. [Filing No. 22-2 at 1.] Aegean was responsible for arranging contracts with architects, engineers, and designers, with any costs already paid by Aegean to be reimbursed out of the fee. [Filing No. 22-2 at 1.] The Agreement expressly stated that: (1) "[w]hether to purchase the ground upon which these projects are to be built and whether to continue to build these projects is solely up to [MSL North Carolina]

who may at any time decide to decline to participate in any one or more of these Senior Living Projects;" and (2) the relationship created between the parties was "not a joint venture or partnership but rather Aegean is an independent consultant to [MSL North Carolina] and there is no fiduciary or special relationship between the two." [Filing No. 22-2 at 2].

Plaintiffs allege that, on October 6, 2015, Defendants created MSL Delaware to avoid liability under the Agreement. [Filing No. 22-1 at 2]. They further allege that both companies use the same name, substantial goodwill and assets have been transferred from MSL North Carolina to MSL Delaware, and "[t]he same people are involved in both." [Filing No. 22-1 at 2.]

In addition, the Senior Living Plaintiffs allege that they "all worked closely with Defendants, to develop senior living facilities Muncie, Anderson and Greenwood, Indiana," and that "Defendants' representative, Todd Hudgins, signed contracts and performed other acts which reflected that Plaintiffs, Muncie, Madison Park and Greenwood and Defendants were in a joint venture with respect to these three projects." [Filing No. 22-1 at 3.] Defendants allegedly "caused senior living projects to be constructed in Anderson and Greenwood," and contracted to purchase land for a project in Muncie, although they defaulted on that contract. [Filing No. 22-1 at 3.] Plaintiffs allegedly provided MSL North Carolina "with a large volume of information, including but not limited to market studies, related to those projects," and "considered this information to be trade secret information," which MSL North Carolina then transferred to MSL Delaware without Plaintiffs' permission. [Filing No. 22-1 at 3.] Plaintiffs also allege that they "expended time and money to seek and receive approval for these projects." [Filing No. 22-1 at 3.]

As to Count I (Breach of Contract), Aegean alleges that, when MSL Delaware was created, it assumed MSL North Carolina's obligations under the Agreement, and both Defendants breached the Agreement by failing to pay the fees owed. [Filing No. 22-1 at 4.]

Under Count II ("Breach of Joint Venture"), the Senior Living Plaintiffs allege that they each engaged in joint ventures with both Defendants, and Defendants breached these joint ventures. [Filing No. 22-1 at 5.]

In Count III (Unjust Enrichment), the Senior Living Plaintiffs allege that they have provided "hundreds of hours of work, confidential market studies, engineering work, financial pro forma and other materials" to MSL North Carolina, which MSL North Carolina used to develop its own senior living projects and then gave to MSL Delaware. [Filing No. 22-1 at 5.] Accordingly, they allege, both "Defendants have been unjustly enriched by Plaintiffs' work," and, "[i]n equity, Defendants should be required to pay." [Filing No. 22-1 at 5.]

Relatedly, in Count IV ("Indiana Trade Secrets Act"), all of the Plaintiffs allege that they provided "trade secret information" to MSL North Carolina, who received it while knowing it was confidential, and "misappropriated the information and used it for its own benefit." [Filing No. 22-1 at 6.] Plaintiffs also allege that MSL North Carolina transferred the information to MSL Delaware and "other third parties" without their knowledge or consent. [Filing No. 22-1 at 6.]

As to Count V (Constructive Fraud), Plaintiffs allege that they "relied to their detriment upon promises made by Defendants, and their authorized agent and representative, Todd Hudgins." [Filing No. 22-1 at 6.] Specifically, they allege that "Defendants repeatedly represented to Plaintiffs that Defendants would develop facilities at these locations," and, based upon such representations, "Plaintiffs expended tens of thousands of dollars in market studies, engineering fees, as well as countless man hours to develop these projects." [Filing No. 22-1 at 6-7.] Then, Plaintiffs allege, "Defendants simply took Plaintiffs' work and completed these projects with another company." [Filing No. 22-1 at 7.] They further allege that Defendants, as "one of the largest senior living companies in the United States, . . . ha[d] much greater knowledge regarding

the development of these facilities," were in a much stronger financial position, and "took advantage of Plaintiffs' relatively weaker position" when they "misled Plaintiffs" into believing that they would work together to develop the senior living projects. [Filing No. 22-1 at 6-7.]

In Count VI ("Fraud and Fraudulent Transfer"), Plaintiffs allege that MSL North Carolina told them that it was the entity that was developing the senior living facilities in Indiana. [Filing No. 22-1 at 7.] However, they allege, MSL North Carolina developed a new entity to do the work, MSL Delaware, without informing them, and thereby both Defendants "lied" regarding the identity of the entity responsible for building the facilities. [Filing No. 22-1 at 7.] Plaintiffs allege that "Defendants committed a material misrepresentation of past or existing fact or otherwise failed to state material facts to Plaintiff," and that "Defendants['] actions constitute fraud and fraudulent transfer." [Filing No. 22-1 at 8.]

MSL Delaware and MSL North Carolina have moved to dismiss the claims against them, [Filing No. 22; Filing No. 29], and those motions are ripe for the Court's decision.

### III.
#### DISCUSSION

**A. Count I: Breach of Contract (by Aegean against both Defendants)**

MSL North Carolina argues that Aegean failed to plead facts showing that the conditions precedent to payment under the Agreement had been satisfied. [Filing No. 23 at 8-9.] Plaintiffs respond that they are not required to plead that the conditions precedent had been satisfied, but regardless, they have stated generally that Aegean had performed all of its duties constituting conditions precedent to payment. [Filing No. 31 at 6-9.]

MSL Delaware argues that Plaintiffs cannot assert a breach of contract claim against it, because it was not a party to the Agreement. [Filing No. 30 at 7-8.] Plaintiffs respond that, because the Agreement was entered into by "Meridian Senior Living, LLC," without reference to a specific

state, the Court should reasonably infer that the Agreement bound MSL Delaware. [Filing No. 35 at 5-6.] MSL Delaware replies that the Second Amended Complaint specifically alleged that: (1) the Agreement was entered into by Plaintiffs and MSL North Carolina; and (2) MSL Delaware was not created until approximately nine months after the Agreement was signed. [Filing No. 37 at 2-3.] Even if it were a party to the Agreement, it asserts, Plaintiffs did not adequately allege that the conditions precedent had been fulfilled. [Filing No. 37 at 3.]

Under Indiana law, in order to prevail on a claim for breach of contract, the plaintiff must demonstrate: (1) the existence of a contract; (2) defendant's breach of that contract; and (3) damages resulting from the breach. *BloomBank v. United Fid. Bank F.S.B.*, 113 N.E.3d 708, 725 (Ind. Ct. App. 2018), *transfer denied*, 123 N.E.3d 129 (Ind. 2019).[1] A condition precedent—in other words, a condition that must be fulfilled before the duty to perform a specific obligation arises—must be satisfied before liability can attach. *McGraw v. Marchioli*, 812 N.E.2d 1154, 1157 (Ind. Ct. App. 2004). Rule 9(c) states that a party pleading that conditions precedent have been satisfied may do so generally. Fed. R. Civ. P. 9(c).

Here, Aegean does not state a plausible claim for breach of contract against either Defendant. As a preliminary matter, Aegean specifically alleged in the Second Amended Complaint that it was MSL North Carolina—not MSL Delaware—that signed the Agreement, [Filing No. 22-1 at 2], so the claim against MSL Delaware fails on that basis. Regardless, even if both Defendants were bound by the Agreement, Aegean has not alleged that all conditions precedent have been satisfied, and, therefore, that liability attached. *See McGraw*, 812 N.E.2d at

---

[1] "Federal courts sitting in diversity cases such as this apply the Federal Rules of Civil Procedure in procedural matters and the state substantive law that applies to the cause of action." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 754 (7th Cir. 2004). Because the pending matters involve issues of substantive law, the Court will apply Indiana law. Moreover, the parties appear to agree that Indiana law applies here, as they both cite it in their briefs.

1157. Although the Second Amended Complaint states that "Aegean performed all conditions precedent to being paid by Defendants," [Filing No. 22-1 at 3], there is no allegation that the other things that needed to occur before payment was due did in fact occur. Aegean has not alleged, even generally, that MSL North Carolina closed on real estate, assumed tax increment financing, or was issued a certificate of occupancy, all of which were necessary to trigger payment under the Agreement. [Filing No. 22-2 at 1.]

### B. Count II: Breach of Joint Venture (by the Senior Living Plaintiffs against Both Defendants)

Both MSL North Carolina and MSL Delaware argue that breach of joint venture is not a valid cause of action under Indiana law. [Filing No. 23 at 9-10; Filing No. 30 at 8-9.] Both also argue that the Senior Living Plaintiffs have failed to plead the existence of an express or implied contract containing the required elements of a joint venture, as the only contract they reference is the Agreement, which explicitly states that no joint venture could be created. [Filing No. 23 at 10-11; Filing No. 30 at 9-10.] The Senior Living Plaintiffs respond that breach of joint venture is a valid cause of action, and the Agreement does not preclude the existence of a joint venture because Aegean was the only plaintiff that was a party to that contract. [Filing No. 31 at 9-11; Filing No. 35 at 6-9.] Both Defendants reply that, even if the Senior Living Plaintiffs were not parties to the Agreement, the Agreement nonetheless contradicts their assertions that any joint venture relationship was created. [Filing No. 34 at 3-4; Filing No. 37 at 3-4.]

A joint venture is an association of two or more persons formed to carry out a single business enterprise for profit. *Walker v. Martin*, 887 N.E.2d 125, 138 (Ind. Ct. App. 2008). For a joint venture to exist, the parties must be bound by an express or implied contract providing for: (1) a community of interests; (2) joint or mutual control; and (3) the sharing of profits. *Id.* The "relationship might be expressly defined in a contract or it might be implied from the conduct of

the parties, but a joint venture will not arise by operation of law." *DLZ Indiana, LLC v. Greene Cty.*, 902 N.E.2d 323, 328 (Ind. Ct. App. 2009). "As with all contracts, whether or not there is a joint venture is ultimately a question of the intent of the parties." *Id*. One joint venturer can sue another for breach of the joint venture agreement. *See, e.g., Eskew v. Cornett*, 744 N.E.2d 954, 956 (Ind. Ct. App. 2001) (one party to the joint venture sued another for breach of the joint purchase agreement, breach of fiduciary duty, and conversion).

Here, to the extent that the Senior Living Plaintiffs intended to assert that Defendants breached the contracts underlying their joint ventures, their claim is cognizable under Indiana law. *See id*. Nevertheless, they have failed to plead sufficient facts demonstrating a plausible claim for relief, as they have not alleged the existence of an express or implied contract. *See DLZ Indiana*, 902 N.E.2d at 328. Their general allegations that they "worked closely with Defendants," and that Todd Hudgins "signed contracts and performed other acts which reflected" the existence of joint ventures, [Filing No. 22-1 at 3], are insufficient, as they do not specifically identify any conduct implying that either Defendant intended to create a joint venture relationship involving the sharing of profits or joint control over the senior living facilities. *See Walker*, 887 N.E.2d at 138.

Indeed, the Agreement with Aegean evidences Defendants' intent not to create a joint venture with respect to any senior living facility, because it expressly precluded the creation of a joint venture or fiduciary relationship. [Filing No. 22-2 at 2.] Although the Senior Living Plaintiffs were not specifically parties to the Agreement, the Agreement mentioned Madison Park as an entity controlled by Aegean and associated with the prospective senior living project in Anderson, Indiana. [Filing No. 22-2 at 1]. Without allegations showing that MSL North Carolina intended to have separate agreements, creating relationships of a different nature, with each of the Senior Living Plaintiffs, Plaintiffs have not stated a claim for breach of the joint venture agreement

against MSL North Carolina. Furthermore, Plaintiffs' allegation that they did not know that MSL Delaware existed contradicts their assertion that they shared a joint venture relationship with that entity and defeats their claim. *See [Tamayo v. Blagojevich](, 526 F.3d 1074, 1086 (7th Cir. 2008)* (explaining that a party can "plead itself out of court" by including facts in its complaint showing that it is not entitled to relief).

### C. Count III: Unjust Enrichment (by the Senior Living Plaintiffs against Both Defendants)

MSL North Carolina argues that the Senior Living Plaintiffs did not allege facts showing that it expressly or impliedly requested that they confer a benefit upon it, or that they expected payment in return. [[Filing No. 23 at 11-12].] MSL Delaware argues that the Senior Living Plaintiffs did not allege that they provided any benefit to it specifically. [[Filing No. 30 at 10-11].] Both Defendants argue that, to the extent that the Senior Living Plaintiffs intended to assert a common law claim for improper use or misappropriation of confidential information, such claim is preempted by the IUTSA. [[Filing No. 23 at 12-13]; [Filing No. 30 at 11-12].]

Plaintiffs respond that their allegations demonstrate that they conferred a measurable benefit upon Defendants—namely, that they "worked closely" with Defendants to develop senior living facilities, incurred expenses while doing so, and provided Defendants with information, including market studies, related to these projects. [[Filing No. 31 at 12-13]; [Filing No. 35 at 9-10].] As to MSL Delaware, Plaintiffs also respond that, while a claim for unjust enrichment based on the misappropriation of trade information would be preempted by the IUTSA, their claim was not based on the misappropriation of trade information, but instead sought payment for the value of the work they performed. [[Filing No. 35 at 11-12].]

In reply, MSL North Carolina reiterates that Plaintiffs did not properly allege an expectation to receive payment, and further argues that Plaintiffs waived any argument that their

common law allegation of misuse of confidential information claim was not preempted by failing to address the issue in their response. [Filing No. 34 at 4.] MSL Delaware argues that Plaintiffs did not properly allege an expectation of reimbursement. [Filing No. 37 at 4-5.]

To recover for unjust enrichment, a plaintiff must show that: (1) he rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) he expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust. *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016). A claim for unjust enrichment involves a constructive contract, implied in law by the court to permit recovery where the circumstances dictate that there should be recovery "under the law of natural and immutable justice." *Zoeller v. E. Chicago Second Century, Inc*., 904 N.E.2d 213, 220-21 (Ind. 2009) (internal quotations and citation omitted).

Here, as the Senior Living Plaintiffs appear to acknowledge, to the extent that they intended to assert a common law cause of action that either Defendant was unjustly enriched by the misappropriation of their trade secrets or confidential information, such claim is preempted by the IUTSA and must be dismissed. *See* Ind. Code § 24-2-3-1(c) (stating that the act "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law"); *See HDNet LLC v. N. Am. Boxing Council*, 972 N.E.2d 920, 923-26 (Ind. Ct. App. 2012) (recognizing that the IUTSA's preemption provision abolishes all freestanding alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret information).

To the extent that the Senior Living Plaintiffs intended to assert that Defendants were unjustly enriched by their expenditure of resources, they have failed to plausibly allege all of the elements of an unjust enrichment claim. Specifically, the Senior Living Plaintiffs have not alleged

that MSL Delaware made an express or implied request for work, or that Plaintiffs had an expectation that they would be reimbursed by MSL Delaware. *See Neibert*, 54 N.E.3d at 1051. In fact, the Senior Living Plaintiffs' allegations that they dealt with MSL North Carolina without knowledge that MSL Delaware existed defeats this claim. As to MSL North Carolina, the Senior Living Plaintiffs similarly did not allege an express or implied request for the work with a corresponding expectation of payment. As previously discussed, the Senior Living Plaintiffs did not make any specific allegations concerning the relationship or agreement between themselves and MSL North Carolina.

### D. IUTSA Violation (by All Plaintiffs against MSL North Carolina)

MSL North Carolina argues that Plaintiffs failed to allege any facts demonstrating that information was misappropriated within the meaning of the IUTSA. [Filing No. 23 at 13-14]. Plaintiffs respond that they adequately alleged that MSL North Carolina, without permission, knowingly transferred confidential information to MSL Delaware. [Filing No. 31 at 14-16.] In reply, MSL North Carolina maintains that Plaintiffs failed to allege a duty to maintain the secrecy of the exchanged information. [Filing No. 34 at 4-5.]

Under the IUTSA, a claimant can recover damages for actual loss or unjust enrichment caused by the misappropriation of trade secrets. Ind. Code § 24-2-3-4(a). "Misappropriation" includes, as relevant here, "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Ind. Code § 24-2-3-2. "Trade secret" means information that: "(1) derives independent economic value . . . from not being generally known to . . . other

persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." [Ind. Code § 24-2-3-2](#).

While Plaintiffs argue that MSL North Carolina's transfer of information to MSL Delaware constituted misappropriation, they fail to identify any specific allegations establishing a plausible claim for relief. Notably, instead of alleging specific facts related to what the nature of their trade secret information was, what circumstances surrounding the relationship with MSL North Carolina implied a duty of confidentiality, what kind of information was actually provided to MSL Delaware, or how MSL Delaware used such information to cause damage, Plaintiffs merely state that trade secret information was misappropriated. Such a formulaic recitation of the elements of an IUTSA claim is insufficient. *See [Iqbal, 556 U.S. at 678](#)* ("A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." (citing *[Twombly, 550 U.S. at 555](#)*)).

### E. Constructive Fraud (by all Plaintiffs against Both Defendants)

Both Defendants argue that Plaintiffs' fraud claims are not pled with sufficient particularity to satsify Rule 9(b). [[Filing No. 23 at 5-7](#); [Filing No. 30 at 4-6](#).] They also argue that, regardless, the constructive fraud claim fails under Rule 12(b)(6). [[Filing No. 23 at 14-15](#); [Filing No. 30 at 12-14](#).] Specifically, MSL North Carolina asserts that Plaintiffs did not allege the existence of a duty owing to them, a fiduciary relationship, any specific deceptive material misrepresentations, or justifiable reliance on any representation. [[Filing No. 23 at 14-15](#).] MSL Delaware argues that the Agreement precludes a claim of constructive fraud because it explicitly states that no fiduciary or special relationship was created, Plaintiffs did not identify any representations that it allegedly made, and the fact that MSL Delaware's existence was unknown to Plaintiffs defeats their claim that they justifiably relied upon some misrepresentation that it made. [[Filing No. 30 at 12-14](#).]

- 13 -

Plaintiffs respond that, because the Senior Living Plaintiffs alleged that they were in a joint venture with Defendants, they had also adequately alleged the existence of a fiduciary relationship. [Filing No. 31 at 16-17.] They further argue that a false representation was made when MSL North Carolina acted as if it was the entity developing the senior living projects, and failed to disclose that MSL Delaware existed and would be the one actually developing the projects. [Filing No. 31 at 17.] In addition, they assert that they plausibly stated facts showing reliance, injury, and an advantage gained by Defendants when they asserted that they spent time and money developing these projects. [Filing No. 31 at 18-19].

"Constructive fraud arises by operation of law from a course of conduct, which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud." *Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010) (citation omitted). "In constructive fraud, the law infers fraud from the relationship of the parties and the circumstances which surround them." *Id*. (citation omitted). The five elements of constructive fraud are: (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Id*. (citing *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind. 1996)).

The duty element may arise through a confidential or fiduciary relationship, which may arise by operation of law—such as between a parent and child or principal and agent—or based on factual circumstances. *McKibben v. Hughes*, 23 N.E.3d 819, 826-27 (Ind. Ct. App. 2014). A confidential relationship in fact exists "when confidence is reposed by one party in another with

resulting superiority and influence exercised by the other." *Id*. (internal quotations and citation omitted). Joint venturers generally owe a fiduciary duty to one another. *See Eskew*, 744 N.E.2d at 958 (concluding that the fiduciary duty between joint venturers was limited by the terms of the contract). However, for purposes of constructive fraud, a fiduciary relationship may not be predicated on the parties' arm's length negotiations resulting in the formation of a contract. *Mullen v. Cogdell*, 643 N.E.2d 390, 401 (Ind. Ct. App. 1994).

Here, Plaintiffs have failed to state a claim for constructive fraud under Rules 9(b) and 12(b)(6). Plaintiffs point to Defendants' allegedly false representation that MSL North Carolina would be developing the senior living facilities, but fail to identify when, where, how, or by whom this representation was made. *See Berkowitz*, 896 F.3d at 839. In addition, to the extent that Aegean intended to assert a constructive fraud claim, it is defeated by the plain language of the Agreement, which precluded the existence of a fiduciary or special relationship. [Filing No. 22-2 at 2.] Furthermore, while the Senior Living Plaintiffs argue that a duty existed in the context of their joint venture relationships with Defendants, as discussed above, they have not alleged sufficient facts demonstrating that such relationships existed. They have also not pled sufficient facts demonstrating that any other type of special relationship existed with either Defendant.

### F. Actual Fraud[2] (by all Plaintiffs against Both Defendants)

Both Defendants argue that Plaintiffs' fraud claims are not pled with sufficient particularity to meet the requirements of Rule 9(b). [Filing No. 23 at 5-7; Filing No. 30 at 4-6.] MSL North

---

[2] The Second Amended Complaint also lists "Fraudulent Transfer" in the heading for Count VI. [Filing No. 22-1 at 7.] Both Defendants assert that no such common law cause of action exists, and instead such a claim would be governed by the Indiana Uniform Fraudulent Transfers Act, which Plaintiffs do not cite. [Filing No. 23 at 16; Filing No. 30 at 14]. Because Plaintiffs did not respond to this argument, or otherwise explain in their responses how they stated a claim for fraudulent transfer, any argument that they did so is waived. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1054 (7th Cir. 2019).

Carolina also argues that Plaintiffs' claim is based on the allegedly broken promise to develop senior living facilities, which is not a cognizable basis for a fraud claim under Indiana law. [Filing No. 23 at 16-17.] MSL Delaware makes substantially the same argument, adding that Plaintiffs never specifically alleged that it made any false representations. [Filing No. 30 at 14-15.] Plaintiffs respond that their allegation of fraud satisfies the Rule 9(b) requirements and is not based on a broken promise, but instead on the fact that, in signing the Agreement, MSL North Carolina misrepresented the identity of the contracting party by stating that it was the party that was developing the senior living facilities, when in fact another entity was doing so. [Filing No. 31 at 19-21; Filing No. 35 at 15-17.] They assert that MSL Delaware is liable for MSL North Carolina's fraudulent conduct under the corporate alter ego doctrine. [Filing No. 35 at 17-18].

Under Indiana law, the elements of actual fraud are: (1) a material misrepresentation of past or existing fact by the defendant, which; (2) was false; (3) was made with knowledge or reckless ignorance of the falsity; (4) was relied upon by the complaining party; and (5) proximately caused the plaintiff's injury. *Kapoor v. Dybwad*, 49 N.E.3d 108, 121 (Ind. Ct. App. 2015) (citing *Rice*, 670 N.E.2d at 1289)). "Actual fraud may not be based on representations of future conduct, on broken promises, or on representations of existing intent that are not executed." *American Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008) (citation omitted).

Plaintiffs have not pled their fraud claim with sufficient particularity to satisfy the requirements of Rule 9(b). They generally allege that MSL North Carolina stated that it was the entity developing the senior living projects, but do not specifically identify the individual who made this representation, or when, where, or by what means this representation was made. To the extent that they argue that the signing of the Agreement constituted the representation, their own

allegation that MSL Delaware did not yet exist contradicts any assertion that the representation was false. For the same reasons, Plaintiffs' allegations against MSL North Carolina are also insufficient under Rule 12(b)(6).

Plaintiffs' claims against MSL Delaware are also insufficient under both Rules 9(b) and 12(b)(6). Again, beyond the general allegation that MSL Delaware "lied" about the identity of the entity that was developing the senior living facilities, or "committed a material misrepresentation of past or existing fact or otherwise failed to state material facts," [Filing No. 22-1 at 8], Plaintiffs failed to identify the speaker, or when, where, or how the representations were communicated. Finally, even under the corporate alter ego doctrine, because Plaintiffs have failed to particularly identify any fraudulent conduct by MSL North Carolina, they have identified no basis for holding MSL Delaware liable. *See Greater Hammond Cmty. Servs., Inc. v. Mutka*, 735 N.E.2d 780, 785 (Ind. 2000) (explaining that the corporate alter ego doctrine applies when the plaintiff shows that two corporations are so closely connected that one will be liable for the actions of the other).

### G. With or Without Prejudice

Defendants ask that the dismissal of Plaintiffs' claims be with prejudice. [Filing No. 22 at 1; Filing No. 29 at 1.] Plaintiffs suggest that they should be given leave to amend. [Filing No. 31 at 21; Filing No. 35 at 18.]

As a general rule, leave to amend should be granted freely as justice requires. *See,*e.*g.*, *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (citing Fed. R. Civ. P. 15(a)(2)). However, the Court has broad discretion to deny leave to amend where there has been undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendant, or where an amendment would be futile. *Gonzalez-Koeneke*, 791 F.3d at 807; *see also Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("[W]here the

plaintiff has repeatedly failed to remedy the same deficiency, the district court d[oes] not abuse its discretion by dismissing the claim with prejudice.").

In state court and in this Court, Defendants have challenged the sufficiency of Plaintiffs' allegations, and Plaintiffs have had ample opportunity to cure any deficiencies, but have failed to do so. Furthermore, Plaintiffs have not indicated that, with leave to amend, they could resolve these defects. Accordingly, dismissal with prejudice is warranted.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** MSL North Carolina's Motion to Dismiss, [22], **GRANTS** MSL Delaware's Motion to Dismiss, [29], and dismisses all of Plaintiffs' claims **WITH PREJUDICE**. Final judgment shall enter accordingly.

Date: 8/30/2019

*[Signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**